## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTERS OF THE TRACKING OF: ) | FILED UNDER SEAL |
| ) | |
| A BLACK BMW 335i ) | |
| TENNESSEE TEMPORARY PLATE ) | 1:21-mj-26 |
| NUMBER 259660; and ) | |
| ) | |
| A 2011 BLACK BMW 335i ) | 1:21-mj-27 |
| TENNESSEE LICENSE PLATE ) | |
| NUMBER 9RH581 AND VIN ) | |
| WBAPM5G50BNN01233 ) | |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, William B. Johnson, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of applications for search warrants under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the installation and monitoring of tracking devices on:

   - a black BMW 335i Tennessee temporary paper license plate number 259660, license plate returns not on file when ran in NCIC, utilized by Vincent Curtis LEE at 6922 Park Drive, Chattanooga, Tennessee, hereinafter referred to as "SUBJECT VEHICLE 3" or "SV3;" and

   - a 2011 black BMW 335i Tennessee license plate number 9RH581 and VIN WBAPM5G50BNN01233, registered to Crystal MILLHOLLAND, hereafter referred to as "SUBJECT VEHICLE 4" or "SV4".

2. Based on the facts set forth in this affidavit, I believe that both SV3 and SV4 are both presently being used in furtherance of conspiracy to distribute methamphetamine in violation of Title 21, United States Code, 846, and that there is probable cause to believe that the installation

of a tracking device on the SV3 and SV4 and use of the tracking devices will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

3. I am a Law Enforcement Officer with the Hamilton County Sheriff's Office Sworn in by the Sheriff of Hamilton County Tennessee. I have been so employed for the past 11 years. I am currently now assigned to the Drug Enforcement Administration ("DEA") as a Task Force Officer ("TFO"). In connection with my official DEA duties, I investigate criminal violations of the federal narcotics laws, including but not limited to, Title 21, United States Code, Sections 841, 843, and 846. I have also been involved in various types of electronic surveillance, the debriefing of defendants, witnesses, informants, and others who have knowledge of narcotics trafficking and of the laundering and concealing of proceeds of drug trafficking. I have had specialized training in and experience in the enforcement of laws concerning the activities of narcotics traffickers, including ten weeks of basic training in Nashville, Tennessee, as well as periodic refresher training offered by DEA, ROCIC, IPTM and other law enforcement entities. I am currently assigned to the DEA Chattanooga Resident Office. My current assignment involves the investigation of high-level drug trafficking organizations in Tennessee, Georgia and elsewhere.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

**PROBABLE CAUSE**

5. The United States, including the Drug Enforcement Administration, is conducting a criminal investigation of Crystal GENSEMER, Vincent Curtis LEE, and others regarding

violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b). The investigation began in June 2020 in coordination with the Hamilton County Sheriff's Office Narcotics and Special Operations Unit (HCSO) and Tennessee Bureau of Investigation (TBI).

6. During the course of the investigation, your Affiant has learned that LEE and GENSEMER obtain large quantities of methamphetamine from a source of supply located in the Atlanta, Georgia area, for distribution in Tennessee and north Georgia. LEE is the leader of this organization and is assisted in the transportation, storage, and distribution of methamphetamine by other members of his organization, including GENSEMER, Jamal SHEPPARD aka "Lilbaby," Garrick GADDIS, Taylor Lauren FOX, and others not yet identified. LEE has been witnessed through physical and electronic surveillance utilizing both SV3 and SV4. Your affiant believes that LEE's organization utilizes SV3 and SV4 to transport methamphetamine from the Atlanta area, to the Eastern District of Tennessee and North Georgia. Your affiant has learned through surveillance and interviews, that LEE utilizes different subjects to transport narcotics between Georgia and Tennessee and that these unknown subjects drive LEE's vehicle, SV3. Your affiant has learned through surveillance that LEE and GENSEMER both utilize SV4 to transport and distribute narcotics around the Chattanooga, Tennessee area.

7. On October 02, 2020, your affiant located through Hamilton County Jail Securus phone system that Inmate Jason CORDELL had contacted LEE at telephone number 423-755-3374. During this call, LEE began to tell CORDELL that he was "catching feelings" for a girl he has been seeing for a week. LEE explained to CORDELL that her name was "Crystal" and that "she is a plug herself." LEE explained to CORDELL that he believed that CORDELL has met her in the past. LEE explained that "Crystal" has her own thing and is real independent. Based on you affiant's training, experience, knowledge of this investigation, your affiant believes LEE is

referring to GENSEMER. LEE was explaining to CORDELL that GENSEMER has her own "plug" meaning GENSEMER has her own source of narcotics and her own customer base.

8. Your Affiant learned through de-confliction that the Tennessee Bureau of Investigation (TBI) currently has an open investigation into LEE, who resided on Park Drive, Chattanooga, Tennessee. Through the TBI's investigation, they have determined LEE to be a large distributor of methamphetamine in Chattanooga, TN. LEE was identified by a TBI confidential source to be organizing the transportation of methamphetamine to Chattanooga, TN., from Atlanta, GA. The TBI has utilized this confidential source to make controlled purchases of ounce quantities of methamphetamine from LEE at the Park drive address.

9. In February of 2017, LEE was convicted of conspiracy to distribute methamphetamine in the United States District Court of the Eastern District of Tennessee and sentenced to 70 months in prison. LEE is currently on supervised release.

10. On December 21, 2020, TFO Johnson, SA Bergren and the HCSO established physical surveillance on the Home2 Suites, located at 2330 Center Street, Chattanooga, Tennessee. The Home2 Suites was the current hotel that GENSEMER and LEE were living at and running their drug operations from. This area of Chattanooga has numerous hotels in a very close proximity of each other that have traditionally been utilized by drug dealers and users because they can move from hotel to hotel without much scrutiny from law enforcement. At approximately 2:02 pm, surveillance units observed a white BMW (SV1) with a drive out tag, utilized by LEE, enter the Home2 Suites parking lot. SV1 was occupied by three subjects. At 2:08 pm, LEE and an unidentified white male, later identified as Johnny DAVIS, exited SV1 and entered the Home2 Suites at the rear entrance.

11. At approximately 2:20 pm, LEE and DAVIS exited the Home2 Suites and walked towards SV1. At approximately 2:43pm, LEE entered back into the Home2 Suites and DAVIS entered the white BMW (SV1) and left the Home2 Suites driving SV1 toward Interstate 75 south bound. Surveillance was maintained on the Home2 Suites. Based on your affiant's knowledge of this investigation and experience, you affiant believed that LEE was having one of his couriers, DAVIS, utilize SV1 to travel to Atlanta, Georgia, to purchase drugs for LEE. Although DAVIS was not followed to Atlanta he showed back up and met with LEE approximately five hours later and your affiant later learned through surveillance that DAVIS had his own vehicle at the same hotel. You affiant believed that DAVIS utilized SV1, LEE's vehicle, because it is a nicer vehicle and less liking to be stopped by law enforcement than DAVIS' vehicle. This is a known tactic of drug dealers.

12. At approximately 4:08 pm, LEE exited the Home2 Suites and entered a black BMW (SV3). LEE, in SV3, made several trips between the Home2 Suites and 6922 Park Drive, his residence. At approximately 6:08 pm, LEE left in SV3 and went to the Sleep Inn located at 2351 Shallowford Village Drive, Chattanooga, Tennessee (which is located next to the Home2 Suites), and backed into a parking space. LEE parked in an open area where no vehicles where present around his vehicle. LEE turned the headlights off to the vehicle and appeared to be waiting on someone. At approximately 6:32 pm, a dark grey Nissan Altima pulled onto the lot of the Sleep Inn and parked beside LEE.

13. At approximately 6:49 pm, LEE exited the Sleep Inn parking lot and pulled into the Days Inn parking lot located at 2350 Shallowford village Drive, Chattanooga, Tennessee, which is across the street from the Sleep Inn, in SV3. The Nissan Altima stayed in place at the Sleep Inn.

The Altima displayed Tennessee tag 3G93M6, registered to Joseph H Meadows on a 2015 Nissan Altima black in color at 7951 Batters Place Road, Chattanooga, TN., 37421.

14. At approximately 6:56 pm, LEE and an unknown white female with long dark hair with a grey toboggan entered the Days Inn but surveillance could not see if they went into a room. LEE was carrying a bag as he entered the Days Inn. At approximately 6:59 pm, LEE and the unknown female entered back into SV3 and exited the Days Inn towards Shallowford Village Drive. Surveillance could not tell if LEE was still carrying the bag or left it at the Days Inn. SV3 traveled back to the Sleep Inn parking lot and the female exited SV3 and entered into the Nissan Altima.

15. At approximately 7:03 pm, LEE, in SV3, traveled back toward Shallowford Village Drive from the Sleep Inn. The Nissan Altima, with the unknown female inside, exited behind LEE and continued back to the Days Inn. At approximately 7:04 pm, LEE arrived back at the Home2 Suites in SV3. Based on your affiant's knowledge of this investigation and experience, you affiant believed that LEE met one of his customers, the subject in the Nissan, and then traveled to another hotel, the Days Inn, to pick up drugs and then returned to the Nissan with one of his workers, the unknown female, to serve the customer in the Nissan, while driving SV3. During this investigation, your affiant has been advised that LEE utilizes different locations to include residences and hotels and workers in the same area to store drugs and sell drugs out of to minimize loss if one location is identified by law enforcement and searched or if unscrupulous subjects attempt to rob one of is locations.

16. At approximately 7:36 pm, the surveillance observed the white BMW (SV1) return to the Home2 Suites. At approximately 7:45 pm, SA Bergren observed DAVIS exit SV1, place a bag into a blue/grey two door pickup truck, and then then drive to the Days Inn, where LEE was

located. DAVIS entered into the Days Inn parking lot in blue GMC truck, met with LEE and the unidentified female at LEE's black BMW (SV3). Due to poor visibility of surveillance, no further activity could be observed during this meeting. Your affiant believed that the courier, DAVIS, was returning from re-supplying with drugs for LEE and parked SV1 at the Home2 Suites, LEE's current hotel and then drove his own vehicle, the GMC truck, to meet LEE across the street at the Days Inn and return the key and possibly get paid for the trip.

17. At approximately 8:30 pm, DAVIS left in his truck. SA Bergren established surveillance on the truck and verified it to be displaying TN registration 1F41K5. TN 1F41K5 shows registered to a Johnny Davis on a 1993 GMC Sonoma, blue in color, at 355 Bennett Lake Road, Jasper, TN, 37347. SA Bergren observed a photo of Davis and identified him as the driver. Surveillance was maintained on the truck and Davis until it left the area.

18. At approximately 8:36 pm, LEE left the Days Inn in the black BMW (SV3) and traveled back to the Home2 Suites. At approximately 8:39 pm, LEE was observed by surveillance at the Home2 Suites. Surveillance observed LEE enter the white BMW (SV1) get on I-75 south bound. LEE exited at exit 333 where he got gas and then continued onto I-75 south towards Atlanta. At approximately 9:13 pm, surveillance was terminated. Your affiant believed that LEE was traveling to Atlanta to meet with his supplier and possibly make a payment to the supplier.

19. On January 05, 2021, United States Magistrate Judge Christopher H. Steger issued a warrant authorizing the collection of prospective, real time location information associated with telephone number 423-280-7312 (TT4) utilized by Crystal GENSEMER. Magistrate Judge Steger also issued an order authorizing the installation and use of a pen register and trap and trace device on TT4.

20. On January 06, 2021, agents with the DEA, TBI and HCSO conducted surveillance of GENSEMER and LEE, utilizing the geolocation. Based on the geo-location, law enforcement was able to identify a new residence, located at 6723 Dupre Road, Chattanooga, Tennessee, that was being utilized by GENSEMER and LEE. This location was a duplex with the numerical of 6723 and 6725. 6723 being on the left side and 6725 being on the right side. Surveillance observed GENSEMER and LEE coming and going from this residence throughout the surveillance and they appeared to be moving in.

21. On January 09, 2021, a TBI agent from Cookeville, Tennessee, contacted SA Bergren in reference to an arrest that they had just conducted. The TBI agent advised that they were investigating a subject that was supplying multi-ounce quantities of methamphetamine in the Cookeville area. TBI stated that they had just arrested this subject with approximately a kilogram of methamphetamine and two guns. The TBI agent said they had been surveilling the subject through geo-location and provided an address of 6725 Dupre Road, Chattanooga, Tennessee, as a location the subject traveled to prior leaving Chattanooga, Tennessee. The TBI agent advised they were interviewing the subject and the subject provided the address of 6723 Dupre Road, Chattanooga, Tennessee, as the location the subject's source of supply instructed him to meet at to purchase the kilogram of methamphetamine that he was arrested with. The TBI agent advised that the subject was being semi-honest but was not telling them everything and was trying to protect someone. SA Bergren asked the TBI agent to check the subject's telephone contacts for 423-637-3572 (Target Telephone 5), utilized by LEE, and 423-637-4994, another known number utilized by GENSEMER. The TBI agent advised that both numbers were in the contacts and listed as "Curt" and "Crystal Curt Gkrl," respectively. The arrested subject would not say that he got the

Page 8 of 16
Case 1:21-mj-00027-CHS   Document 5   Filed 02/09/21   Page 8 of 16   PageID #: 13

methamphetamine from LEE or GENSEMER but did say he went to 6723 Dupre Road, which was a duplex, and went into the left side to purchase the methamphetamine from a female.

22. On January 11, 2021, the TBI agent called SA Bergren and advised that after talking with SA Bergren he reviewed the WHATSAPP messages on the subject's phone and there were numerous text conversations with 423-637-3572 (Target Telephone 5) arranging the purchase of the kilogram of methamphetamine that the subject was arrested with and numerous old conversations reference to other times the subject purchased kilograms of methamphetamine from LEE, listed as "Curt". The TBI agent provided the arrested subject's phone number as 386-209-8165. SA Bergren reviewed toll information for 423-637-3572 (Target Telephone 5) and there were eleven contacts between these two numbers from December 6 to December 8, 2020. The TBI agent advised that he was going to apply for a search warrant for this phone.

23. On January 12, 2021, Tennessee Bureau of Investigation (TBI) SA Lauren Moon and East Ridge Police Department (ERPD) Investigators Kimsey and Hawks made contact with a cooperating defendant, hereinafter referred to as the "CD." The CD stated they believe the largest methamphetamine dealer in Hamilton County is a Caucasian male known as "Curt". The CD advised they believed his name to be LEE. The CD was shown a photograph of LEE and the CD confirmed the photo to be who they knew as "Curt". The CD knew LEE through previous drug transaction and has known LEE for approximately fifteen years. The CD provided that LEE was recently released on house arrest and maintained an apartment off Lee Highway across from the Food City, which law enforcement knew to be his mother's residence at 6922 Park Drive. The CD stated that they began dealing with LEE again approximately four to five months ago because the CD heard Lee was the top local supplier and the CD assumed LEE would have the best prices for methamphetamine. Since dealing with LEE, the CD described LEE's apartment as a "revolving

door" for methamphetamine and advised they had seen up to four or five kilograms of methamphetamine at one time within the apartment or within the garbage can LEE keeps outside. The CD provided in the past four to five months the CD has middle ounce deals of methamphetamine with LEE and others. The CD provided that LEE charged them $350.00 an ounce and others $450.00 an ounce. The CD further stated that prices were dependent on if it was "local dope" or "Atlanta dope". The CD provided that LEE has an unknown Atlanta source that supplies LEE with kilogram amounts of methamphetamine; however, associates of LEE always make the "runs" (trips) for LEE. On occasion, the CD has been asked by LEE to go to Atlanta for LEE to pick up the methamphetamine, but the CD advised they have never agreed to that. The CD advised that two of LEE's associates were Jamal SHEPPERD, aka "Lilbaby" and Garrick GADDIS. The CD referred to SHEPPERD as the "heavy" and explained that SHEPPERD is who LEE has to handle any problems.

24. On January 27, 2021, United States Magistrate Judge Susan Lee issued a warrant authorizing the collection of prospective, real time location information associated with telephone number 423-637-3572 (TT5), utilized by LEE. Magistrate Judge Lee also issued an order authorizing the installation and use of a pen register and trap and trace device on TT5.

25. On February 01, 2021, your affiant and SA Bergren reviewed the pen register and trace data and observed that LEE had received a telephone call from 912-237-0458 that morning. This number was de-conflicted through a law enforcement database and the database showed this number to be in contact with Eduard BOBRIK aka "EDDIE" and "RUSSIA" and Ignacio VERGARA aka "NACHO," two targets of DEA Atlanta investigations involving large scale methamphetamine distribution and the Georgia State Prison system. SA Bergren made contact with one of the lead investigators, who advised that BOBRIK is a Russian National that distributes

methamphetamine and other drugs to numerous Ghost Face Gangsters, a street gang, in Georgia and other states. Based on this call and information, your affiant, SA Bergren, and the HCSO conducted surveillance of LEE. Surveillance was established on the Staybridge Suites (LEE's current hotel), 6922 Park Drive, and 6723 Dupre Road, which are all recent locations that have been identified during this investigation as being utilized by LEE for drug trafficking activities. TBI had recently seized a kilogram of methamphetamine from one of LEE's customers in Putman County, Tennessee, and this customer had last traveled to 6723 Dupre Road prior to getting arrested. Your affiant knew that LEE was aware that law enforcement knew about this address and was presently utilizing hotels for his drug distribution activities because he was worried law enforcement was watching the Dupre location. At approximately 3:40 pm, surveillance observed LEE exit the Staybridge Suites, get into his black Mustang (SV2), and travel to 6922 Park Drive. LEE exited SV2 with a bag and went inside of the residence. At approximately 3:58 pm, LEE exited the residence was traveled to the Hamilton Inn in SV2. At the Hamilton Inn, surveillance observed a white male walk over to SV2 and appear to speak to LEE and then go back into a hotel room. The same subject came back out and got into the passenger side of SV2. Surveillance followed SV2 back to the residence on Park Drive. LEE and the white male subject exit SV2 and talk for a minute and then they went into the residence on Park Drive. They then came out and your affiant observed LEE go into the trunk of SV2 but surveillance could not see what was being put into or taken out of the trunk. Your affiant knows that courier put money and contraband into the trunk of their vehicle to keep these items from plain view of law enforcement if they are stopped. The white male subject then left Park Drive driving SV2. Surveillance followed SV2 onto I-75 south bound into Georgia.

26. Surveillance observed the unknown white male in SV2 go to a residence in Georgia, located at 267 Carrol Drive, Ringgold, Georgia for a few minutes. The subject did not exit the vehicle but an unknown white male was observed in the doorway of the residence getting ready to exit the house. After about five minutes surveillance observed SV2 leaving and travel to a nearby gas station. The unknown male in SV2 gassed up SV2, purchased snacks, and left the gas station towards I-75 south bound. At this point, surveillance lost SV2. Surveillance was re-established on LEE around the Staybridge Suites and Park Drive. At approximately midnight, SV2 had not yet returned as expected and physical surveillance of LEE was terminated. Law enforcement was waiting to see if the white male in SV2 would return and meet with LEE.

27. The next day, on February 2, 2021, your affiant spoke with TBI Agent Ayriel Novak who has access to electronic surveillance established on Park Drive. Agent Novak advised that the footage was not very clear due to the weather and time of night but that between 3:00 am and 4:00 am there was a lot of activity on Park Drive and it appeared SV2 had returned to the Park Drive residence. Agent Novak was not able to confirm is LEE was there or what exactly occurred when SV2 returned. Your affiant believed that the courier in SV2 returned to Park Drive with drugs for LEE. It is common practice for there to be a lot of activity when dealers re-supply because customers are waiting for the drugs and they all want to get the drugs as soon as they are available.

28. On February 04, 2021, your Affiant was traveling south on Lee Highway in Chattanooga, Tennessee, and observed GENSEMER, in her 2011 black BMW Tennessee license plate number 9RH581 (SV4), at the Express Car Wash, located at 6434 Lee Highway, Chattanooga, Tennessee, meeting with Bruce SUTTON. SUTTON is a target in this investigation and is known by your Affiant to be a distributor of methamphetamine and methamphetamine

customer of GENSEMER.[1] The Express Car Wash is located within 200 yards of GENSEMER's residence at 6723 Dupre Road, Chattanooga, Tennessee. Your Affiant began surveillance of this meeting and observed what your Affiant believed to be a drug transaction occur. Your Affiant knows both GENSEMER and LEE to utilize this car wash to meet customers and conduct drug transactions because they do not want customers coming to 6723 Dupre Road, Chattanooga, Tennessee, because of the previously discussed arrest of the subject in the Cookeville area and this subject's association with the Dupre Road residence.

29. On February 05, 2021, your Affiant was parked in front of the Federal Building, located at 900 Georgia Avenue, Chattanooga, Tennessee, and observed a 2011 black BMW Tennessee license plate number 9RH581 (SV4) arrive and park on Georgia Avenue. LEE was driving and exited the driver's side and GENSEMER exited the passenger's side. One of them paid for parking and then they entered the Federal Building. After a few minutes, GENSEMER exited the building alone. LEE was still inside the Federal Building. LEE is on federal supervised release and your Affiant believed that LEE had a meeting with his Probation Officer at the U.S. Probation Office located there.

30. Based on the above provided information, I believe that the installation of a tracking devices on SV3 and SV4 will allow law enforcement to gather further evidence on LEE's Drug Trafficking Organization. Specifically, it is believed that information obtained from the tracking

---

[1] Between June 11 and August 7, 2020, the HCSO utilized a HCSO Confidential Source to make four separate controlled purchases of methamphetamine from Bruce SUTTON. The controlled purchases ranged from approximately 3.5 grams of suspected methamphetamine to approximately 55 grams of suspected methamphetamine for $1,100.00. On August 28, 2020, HCSO deputies conducted a traffic stop when SUTTON in Hamilton County, Tennessee. This stop resulted in the seizure of approximately three kilograms of suspected methamphetamine.

devices will assist law enforcement in identifying LEE's and GENSEMER's source(s) of supply, stash houses, other methods of movement, and more narcotics customers.

31. Based on surveillance of SV3 and SV4, I know that SV3 and SV4 are presently within Eastern District of Tennessee.

32. In order to track the movement of SV3 and SV4 effectively and to decrease the chance of detection, I seek authorization to place a tracking device on SV3 and SV4 while they are in the Eastern District of Tennessee. Because LEE sometimes parks SV3 and SV4 in driveways and on other private property, it may be necessary to enter onto private property and/or move SV3 and SV4 to affect the installation, repair, replacement, and removal of the tracking device. Specifically, authorization is sought to enter the 6922 Park Drive and/or 6723 Dupre Road, Chattanooga, Tennessee, for the installation, maintenance, and removal of the tracking device.

33. To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the court authorize installation, maintenance, and removal of the tracking devices during both daytime and nighttime hours. The authorization to the install the tracking devices at nighttime hours will allow officers to covertly install the devices while minimizing detection by LEE or his associates.

34. In the event the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period of 30 days following installation of the devices. The tracking devices may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

## AUTHORIZATION REQUEST

35. Based on the foregoing, I request that the Court issue the proposed search warrants, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorizes members

Page 14 of 16
Case 1:21-mj-00027-CHS    Document 5    Filed 02/09/21    Page 14 of 16    PageID #: 19

of Drug Enforcement Administration or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to install tracking devices on SUBJECT VEHICLE 3 (SV3) and SUBJECT VEHCILE 4 (SV4) within the Eastern District of Tennessee within 10 days of the issuance of the proposed warrant, to maintain, repair, and/or replace the tracking device as necessary, and to remove the tracking devices from SUBJECT VEHICLE 3 and SUBJECT VEHCILE 4 after the use of the tracking device has ended during both daytime and nighttime hours; and to monitor the tracking devices for a period of 30 days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the Eastern District of Tennessee.

36. In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for 90 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior. The DEA will provide notification within 90 days after the end of the authorized period (including any extensions thereof). I believe such delay in providing notice is necessary in order to protect the integrity of this investigation and to ensure the safety of confidential sources. I believe that if LEE or GENSEMER were to be notified of the execution of said warrant prior to the completion of this investigation, LEE and GENSEMER would likely change vehicles, telephone number(s), and sites utilized to conduct their drug

business. Notification prior to 90 days would thus hamper law enforcement's ability to collect the necessary evidence to identify the scope of LEE's organization and to collect additional evidence against the organization for successful prosecution.

Respectfully submitted,

_William B. Johnson_
William B. Johnson
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on _February 9_, 2021

_Christopher H. Steger_
HON. CHRISTOPHER H. STEGER
UNITED STATES MAGISTRATE JUDGE